UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


DOCKET #
6:22-cr-157-CEM-RMN

UNITED STATES OF AMERICA


V.


MIGUEL ALEJANDRO DIAZ GONZALEZ



SENTENCING MEMORANDUM


The defendant MIGUEL ALEJANDRO DIAZ GONZALEZ by and through his undersigned counsel, hereby files this Sentencing Memorandum in support of a reasonable sentence, which is sufficient, but not greater than necessary to accomplish the goals of sentencing.  As grounds therefore, the defense would state the following:



**FACTUAL AND PROCEDURAL BACKGROUND:**

The defendant adopts the factual and procedural background in the PSR minus the previous objections.

**CASE HISTORY**

An indictment was filed in this matter on September 21, 2022, charging Miguel Alejandro Diaz Gonzalez with:  Count I:  Inducing a minor to engage in sexually explicit activities for the purpose of producing a visual depiction of the activity.  18 U.S.C. , sec 2251(a) and (e ); and Counts II-V: Aiding and Abetting the Transportation of Child Pornography, 18 U.S.C. 2252A (a)(1), and 2252A (b)(1) and (2).

The defendant signed a plea agreement to Counts I and II on May 16, 2023, and a plea hearing was conducted as to these two Counts on May 18, 2023. The U.S. Attorney will dismiss Counts III, IV and V at sentencing.

The U.S. Attorney has agreed to recommend to the Court at sentencing a two-level downward adjustment for acceptance of responsibility, pursuant to USSG, sec. 3E1.1(a)  subject to the terms of the plea agreement.

The U.S. Attorney has also agreed, under the conditions in the agreement, at sentencing to a file a motion pursuant to USSG sec. 3E1.1(b) for a downward adjustment of one additional level, subject to the terms of the plea agreement.

**HISTORY AND CHARACTERISTICS OF DEFENDANT**

Mr. Gonzalez is currently 41 years old.  He is the father of two boys with whom he had a good relationship, prior to his current incarceration.   His mother

states that he is close to her, and that he has always been there for her when she needed help.

The defendant says that he has a substance abuse and alcohol problem that is a result of an attempt to self-medicate.

The defense adopts the history and characteristics in the presentencing report.

**SENTENCING ISSUES**

United States v. Booker and 18 U.S.C. § 3553(a)

The decision of the United States Supreme Court in Booker has rendered the United States Sentencing Guidelines "effectively advisory." Booker, 543 US 220, 249-65. Pursuant to Booker, sentencing courts are required to consider a defendant's Guideline range, but may "tailor the sentence in light of other statutory concerns as well." Id. at 265 (citing 18 U.S.C. § 3553 (a)). Cunningham v. California, 549 U.S. 270 (2007), Rita v. U.S., 551 U.S. 338 (2007), Gall v. U.S., 552 U.S. 38, 128 S. Ct. 586 (2007), and Kimbrough v. U.S., 552 U.S. 85, 128 S. Ct. 558 (2007) have made it clear district court judges are no longer bound by the guideline outcomes, and instead in determining what is an appropriate sentence in a particular case are to consult and consider the guidelines, then consider all of the factors found in 18 U.S.C. § 3553(a) to determine a reasonable sentence tailored to the specifics of the particular case at hand. See e.g., Kimbrough v. U.S., 128 S.Ct. 558, 570 (2007). The effect of Booker is that

federal district courts must consider the seven factors set forth by § 3553 (a) in

determining a sentence:

(1) the nature and circumstances of the offense and the history and

characteristics of the defendant;

(2) the need for the sentence imposed;

(A) to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational

training, medical care, or other correctional treatment in the most

effective manner;

(3) the kinds of sentences available;

(4) [the applicable Sentencing Guidelines];

(5) any pertinent [Sentencing Guidelines] policy statement;

(6) the need to avoid unwarranted sentence disparities among defendants

with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victim of the offense.


Sentencing under § 3553 (a) requires the Court to start with the minimum

sentence permissible and add only so much additional punishment, if any, as

necessary to comply with §3553(a)'s purposes. As discussed below, application of

the § 3553(a) factors to the facts of this case establishes that, assuming this court

determines sec. 924 to be unconstitutional and does not impose a sentence under

this, that a below guidelines would be appropriate.


Purpose of Sentencing

Section 3553(a)(2) lists four purposes of sentencing, which can be

summarized as: (1) just punishment; (2) deterrence; (3) protection of the public;

and (4) rehabilitation. Under the parsimony principal, the sentence in this case

should be the minimum necessary to accomplish the listed purposes. *See* 18

U.S.C. § 3553(a); *United States v. Lacy*, 99 F. Supp.2d 108, 119 (D. Mass 2000).


Sentencing Applicable to Defendant:

Under Booker v. U.S., 543 U.S. (2005) while the sentencing guidelines are

to be considered, departures in sentencing are discretionary and require the Court

to consider other factors set forth in Title 18, United States Code, sec. 3553.

Issues to be considered would include mental and emotional conditions 5H1.3.

While addiction is not normally a reason for a departure, to the extent that it is

indicative of a mental or emotional condition, or be related to physical appearance

or condition, the defense would argue that a downward departure would be

appropriate.

Downward Departures Appropriate:

§5H1.3 indicates a downward departure for  Mental and Emotional

Conditions:   Mr. Gonzalez represents that he has was previously molested as a

youngster, and that he suffers emotional stress from that experience.  He was

incarcerated as a youth where he was victimized.  He also states that he received

mental health treatment when he was a youngster, but refused to comply with his

prescribed medications.

Mr. Gonzalez has also stated that he has used various substances to numb

his emotional pain ever since he was a teenager.  He states that he has been able to

stay high on K2 and alcohol ever since his arrest and his detention in the Orange

County jail on this case.  While intoxication and addiction are not normally

reasons for a downward departure, in this case it is indicative of an underlying

mental health problem.


Sentence Not Greater Than Necessary for Goal of Sentencing:

Since a sentence must not be greater than what is necessary to meet the

goals of sentencing, it is important to consider the empirical peer reviewed studies

by leading experts in the field of sex offender recidivism.

In *Sex Offender Recidivism: A Simple Question 2004-03*, Andrew J.R.

Harris and R. Karl Hanson (in particular see Table 2, page 8) studied the variation

in rates of recidivism of sex offenders. (See Appendix).   They found that the

lowest rate of recidivism was seen in those who offended with girls in intrafamily

relationships.  Those who offended with girls were less likely to reoffend, than

those who offended with boys.   And those who offended with intrafamily

relationships were less likely to reoffend, than those who offended with strangers.

Mr. Gonzalez offended with the daughter of his girl-friend without whom he co-

habituated, so his offense would be considered intrafamily.   The other young girls with whom he had in appropriate conversations and displays of genitalia, were the off-spring of another girl-friend and her friend.  This also could be interpreted as intrafamily.  Further, he did not touch these other two girls with whom he had inappropriate conversations and displays of genitalia over the internet.   It is important to note that Mr. Gonzalez did not offend with boys, so that would also decrease his rate of recidivism by half.

Individuals who have not had a prior conviction for a sex offense are also half as likely to re-offend as those who have a prior conviction for a sex offense. Since Mr. Gonzalez did not have a prior conviction for a sex offense, he would be less likely to reoffend.

Age at time of release is also a significant factor according to this study. Offenders who are released after 50 years old, are have as likely to offend as those who are released prior to 50 years old.

In *Recidivism and Age:  Follow Up Data from 4673 Sexual Offenders* (*Journal of Interpersonal Violence*, October 2002)  R. Karl Hanson studied how age at release affected recidivism.  He found that none of the offenders who were released after 60 years of age reoffended.  (Hanson, p. 1054).  (See Appendix)

Further, it is important to note that the U.S. Sentencing Commission Report "Length of Incarceration and Recidivism" states: "offenders incarcerated for more than 120 months were less likely to recidivate eight years after release."

Considering what is known about rates of recidivism with sex offenders, anything beyond 20 years incarcerated would exceed the purpose of sentencing. Given that Mr. Gonzalez is currently 41 years old, a sentence of 20 years would mean that his risk of re-offense was nil. Given the current state of sex-offender registration requirements, Mr. Gonzalez would continue to be closely monitored and he would have restrictions on his life that would further minimize chances of reoffending. 20-years would be sufficient time to make sure that Mr. Gonzalez does not re-offend—so the public would be safe. The victim will have become an adult. The sentence would be sufficiently hard to deter other offenses. It would allow for the defendant to be rehabilitated. It would be just. If needed, it would also provide sufficient time for Mr. Gonzalez to also work to provide restitution to the victims.

Respectfully submitted.
Through counsel:

*/s/ Dale Marie Merrill*
Dale Marie Merrill, FL Bar #12604
Law Office of Dale Marie Merrill
P.O. Box 2139
Crystal River, FL 34423
Phone: 352-795-3327
Fax: 352-795-3324
Email: dalemariem@aol.com

APPENDIX

APPENDIX CONTENTS:

1. *Sex Offender Recidivism: A Simple Question 2004-03*, Andrew J.R. Harris and

R. Karl Hanson

2. *Recidivism and Age:  Follow Up Data from 4673 Sexual Offenders* (*Journal of

Interpersonal Violence*, October 2002)  R. Karl Hanson

Andrew J.R. Harris and R. Karl Hanson

"Sex Offender Recidivism: A Simple Question"  2004

Andrew J. R. Harris and R. Karl Hanson

Public Safety and Emergency Preparedness Canada

**Sex Offender**

**Recidivism:**

**A Simple Question**

**2004-03**

This document is available in French.  Ce rapport est disponible en français sous le titre :
La récidive sexuelle : d'une simplicité trompeuse.

This document is also available on Public Safety and
Emergency Preparedness Canada's Internet site:  http://www.psepc-sppcc.gc.ca.

© Her Majesty the Queen in Right of Canada, represented by the Sollicitor General of Canada (Minister of Public Safety and Emergency Preparedness), 2004. All rights reserved.

Paper version
Cat. No. PS3-1/2004-3
ISBN 0-662-68211-4

PDF version
Cat. No. PS3-1/2004-3E-PDF
ISBN 0-662-37095-3

i

# Table of Contents

Abstract..................................................................................................................................ii

Introduction..........................................................................................................................1

Method .................................................................................................................................3

Results ..................................................................................................................................7

Discussion ...........................................................................................................................11

References............................................................................................................................15

Appendix I: Figures ...........................................................................................................17

Appendix II: Stability of Sexual Recidivism Estimates....................................................23

ii

## Abstract

This study examines sexual recidivism, as expressed by new charges or convictions for sexual offences, using the data from 10 follow-up studies of adult male sexual offenders (combined sample of 4,724). Results indicated that most sexual offenders do not re-offend sexually, that first-time sexual offenders are significantly less likely to sexually re-offend than those with previous sexual convictions, and that offenders over the age of 50 are less likely to re-offend than younger offenders. In addition, it was found that the longer offenders remained offence-free in the community the less likely they are to re-offend sexually. Data shows that rapists, incest offenders, "girl-victim" child molesters, and "boy-victim" child molesters recidivate at significantly different rates. These results challenge some commonly held beliefs about sexual recidivism and have implications for policies designed to manage the risk posed by convicted sexual offenders.

1

# Introduction

Just about everybody would like to know how often sexual offenders recidivate with another sexual offence. Concerned politicians, an engaged media, and worried parents often assume that the recidivism risk of sexual offenders is extremely high, and routinely ask those working with this population questions such as "all sex offenders do it again don't they?" and "won't they just do it again if you let them out?" Such questions are best answered by appealing to research evidence; first, however, it is important to carefully consider the question being asked.

A Simple Question

The basic question about sexual offender recidivism is usually phrased along the following lines: "what percentage of sexual offenders commit another sexual offence once they've been released from prison?" This question is not as easy to answer as one might believe. First, we must define "recidivism". In some studies, recidivism is defined as a reconviction for a sexual offence (e.g., Hanson, Scott & Steffy, 1995). In other studies, recidivism includes all offenders who were charged with a new sexual offence, whether or not they were convicted (e.g., Song & Lieb, 1995). Including charges along with convictions should, of course, lead to higher estimates of recidivism (Prentky, Lee, Knight & Cerce, 1997). Other studies have used expanded definitions of sexual recidivism that include informal reports to child protection agencies, self-report, violations of conditional release conditions, and simply being questioned by police (e.g., Marshall & Barbaree, 1988). All else being equal, the estimated recidivism rate should increase with each expansion of the definition; the broader the definition, the larger the recidivism estimate should appear. Consequently, it is important to specify the recidivism criteria in any recidivism estimate (e.g., "what percentage of sexual offenders are either charged with, or convicted of, another sexual offence once they've been released from prison?")

Another factor to consider is the length of the follow-up period. As the follow-up period increases, the cumulative number of recidivists can only increase. It is important to remember, however, that an increase in the number of recidivists is not the same as an increase in the yearly rate of recidivism. For all crimes (and almost all behaviours) the likelihood that the behaviour will reappear decreases the longer the person has abstained from that behaviour. The recidivism rate within the first two years after release from prison is much higher than the recidivism rate between years 10 and 12 after release from prison. Consequently, any estimate of sexual re-offending must be "time-defined" or "time limited" (e.g., "over the first five years, post-release from prison, what percentage of sexual offenders are either charged with, or convicted of, another sexual offence?")

A third factor to consider is the diversity among sexual offenders. We know that incest offenders recidivate at a significantly lower rate than offenders who target victims outside the family (Hanson & Bussière, 1998). We also know that child molesters with male victims recidivate at a significantly higher rate than child molesters that only have girl victims (Hanson & Bussière, 1998). By considering the type of sexual offender, our simple question becomes, once again, more complex: (e.g., "over the first five years, post-release from prison, what percentage of child molesters with male victims are either charged with, or convicted of, another sexual offence?")

Many sexual offences are never reported to police; this is the same for all violent offences except murder. Our best estimates of unreported sexual offending come from victimization studies. In a typical study a random sample of people are telephoned and asked if they have been a victim of a crime within the last year. One recent victimization study found that there were approximately half a million sexual

2

assaults (499,000) committed in Canada in 1999 (Besserer & Trainor, 2000). Although reports to police of violent and sexual crimes were steadily declining in Canada between the years 1993 and 1999; the years 2000 and 2001 saw 1% increases in violent and sexual crimes (Savoie, 2002). Sexual victimization rates based upon victimization surveys appear to have remained basically unchanged across this same time period (Besserer & Trainor, 2000). The Besserer and Trainor (2000) study showed that sexual assault had the highest percentage of incidents that were not reported to police (78%). When respondents were asked why they did not report sexual victimization to the police, 59% of the respondents stated that the "incident was not important enough" to report. Consequently, readers may wonder what counts as a sexual assault.

The Besserer and Trainor (2000) victimization study used a very broad definition of sexual assault. They counted all attempts at forced sexual activity, all unwanted sexual touching, grabbing, kissing, and fondling, as well as threats of sexual assault (Jennifer Tuffs, personal communication, January 15, 2003). Their broad definition undoubtedly included some behaviours that do not conform to the popular image of a sexual offence.

All unwanted sexual advances are wrong, possibly criminal, and have the potential to do psychological harm to the victim. As a society, however, we need to decide whether we wish to count an unwanted touch on the buttocks as an unreported sexual crime. Coming to an agreement on what constitutes a sexual crime will be a difficult task. Setting the bar too low would criminalize social clumsiness and over-state the problem of sexual assault. Setting the bar too high would devalue those victims who, while sustaining no overt signs of trauma, may have truly suffered at the hands of a sexual assailant. A detailed examination of the relationship between observed and undetected sexual offences is beyond the scope of the current paper. Readers should be aware, however, that the answer to the simple question of sexual offence recidivism requires specifying the nature of the offences being considered. In the analyses that follow, recidivism is defined as sexual offences reported to police that are credible and sufficiently serious to justify charges or convictions.

The above review indicates that the simple question is not so simple. Rather than asking "how often do sexual offenders re-offend"; the informed reader would inquire about the recidivism rates of particular types of sexual offenders (e.g., incest offenders versus rapists for example), over a specific time period (e.g., 10 years) using a particular definition of recidivism (e.g., new convictions for a sexual offence). Failure to specify these distinctions can lead to wildly different estimates of the rate of sexual recidivism.

The present study addresses the question of sexual offender recidivism using a large, diverse sample drawn from multiple jurisdictions. The combined sample is sufficiently large (4,724) that it is possible to calculate stable estimates of the observed recidivism rates after five, 10, and 15 years of follow-up for important subgroups of sexual offenders: rapists, girl victim child molesters, boy victim child molesters, incest offenders, those with or without a prior sexual offence, older offenders (age greater than 50 at release) and younger offenders. This study also provides recidivism estimates for sex offenders who have been offence-free in the community for 5, 10, and 15 years.

3

# Method

## The Samples

The present sample (N = 4,724) is comprised of 10 individual sub-samples. These sub-samples range in size from 191 offenders to 1,138 offenders and were drawn from the following jurisdictions: Quebec, Ontario, Manitoba, Alberta, California, Washington, Her Majesty's Prison Service (England and Wales), and the Correctional Service of Canada (CSC; 3 data sets). In five of the samples, "conviction for a sexual offence" was used as the recidivism criteria, in another four samples both "charges and convictions for another sexual offence" was used as the recidivism criteria. In one sample (Manitoba), charges, convictions, and additional police information were used as the recidivism criteria. An overview of the samples is presented in Table 1.

All the offenders were released from correctional institutions with the exception of the Manitoba Probation sample and about half of the offenders from the Washington sample, who received community sentences. Racial ethnicity was not recorded for most samples, but given the demographics of the provinces, states and countries from which they were selected, the offenders can be expected to be predominantly white. All offenders were adult males (18 years old or older at time of release). Thirty-seven percent of the offenders were single and 27.9% had previously been sentenced for a sexual offence (9.4% had been sentenced more than once).

Canadian Federal – Pacific Region (CS/RESORS Consulting, 1991; Hanson, Broom & Stephenson, 2004). This study followed sexual offenders released in British Columbia between 1976 and 1992. The original aim of the study was to compare offenders who received mandatory community counselling (n = 401) and those released in earlier years without the benefit of this post-release program (n = 288). Offenders released in the 1983/84 fiscal year (n = 38) were removed from this sample to avoid overlap with the other CSC cohort described below. Recidivism information was coded in 2000 from Royal Canadian Mounted Police (RCMP) records. Charges and convictions for sexual offences were used as the recidivism criteria in this sample.

Canadian Federal Recidivism Study - 1983/1984 Releases (Bonta & Hanson, 1995a; see also Bonta & Hanson, 1995b). This study examined the 316 sexual offenders included in the complete sample of 3,180 federal offenders released by the CSC in the fiscal year 1983/1984. Sexual offenders were defined as those who were released following any sexual conviction. Recidivism information was collected in 1994 using national criminal history records maintained by the RCMP. Conviction for another sexual offence was used as the recidivism criteria in this sample.

Canadian Federal 1991 to 1994 Releases (Motiuk & Brown, 1993; Motiuk & Brown, 1996). This study followed a group of sexual offenders released by CSC between 1991 and 1994. The offenders in this group were those who were reviewed in 1991 (see Motiuk & Porporino, 1993) while they were still incarcerated. Follow-up information was coded in 1994 from RCMP records. Charges and convictions for another sexual offence were used as the recidivism criteria in this sample.

Millbrook Recidivism Study (Hanson, Scott, & Steffy, 1995; Hanson, Steffy, & Gauthier, 1992; Hanson, Steffy, & Gauthier, 1993). This study collected long-term recidivism information (15-30 years) for child molesters released between 1958 and 1974 from Millbrook Correctional Centre, a maximum security provincial correctional facility located in Ontario, Canada. About half of the sample went through a brief treatment program. Recidivism information was coded from RCMP records in 1989 and 1991. Conviction for another sexual offence was used as the recidivism criteria in this sample.

Institut Philippe Pinel (Montreal). (Proulx, Pellerin, McKibben, Aubut & Ouimet, 1997 ; Pellerin et al., 1996). This study focused on sexual offenders treated at a maximum security psychiatric facility between 1978 and 1993. The Institut Philippe Pinel in Montreal provides long term (1-3 years) treatment for sexual offenders referred from both the mental health and correctional systems. Recidivism information

4

Table 1

Study characteristics.

| Sample | Total Sample Size | Age (SD) | Offender type Rape/EX/IN (%) | Sample size for type | Average years of follow-up | Sexual Recid. Rate | Recidivism Criteria |
|---|---|---|---|---|---|---|---|
| Canadian Federal - Pacific | 689 | 38 (11) | 36 / 30 / 33 | 362 | 11 | 24.7 | Chgs & Convic |
| Canadian Federal - 1983/84 | 316 | 31 (8.7) | -- / -- / -- | 0 | 10 | 19.7 | Convictions |
| Canadian Federal - 1991/94 | 241 | 37 (11) | 53 / 19 / 28 | 208 | 2 | 7.1 | Chgs & Convic |
| Millbrook, Ontario | 186 | 33 (10) | 00 / 82 / 18 | 186 | 23 | 35.5 | Convictions |
| Institut Philippe Pinel | 363 | 36 (11) | 30 / 43 / 27 | 349 | 4 | 16.3 | Convictions |
| Alberta Hospital Edmonton | 363 | 36 (10) | 27 / 27 / 46 | 363 | 5 | 5.5 | Convictions |
| SOTEP (California) | 1137 | 38 (8.9) | 29 / 40 / 31 | 1130 | 5 | 13.3 | Chgs & Convic |
| HM Prison Service (UK) | 529 | 36 (12) | 53 / 32 / 15 | 325 | 16 | 25.7 | Convictions |
| Washington State SSOSA | 587 | 36 (13) | 10 / 41 / 49 | 582 | 5 | 7.5 | Chgs & Convic |
| Manitoba Probation | 202 | 35 (12) | 26 / 42 / 32 | 128 | 2 | 10.2 | Chgs & Convic Plus |

Note: EX = Extrafamilial child molesters; IN = Intrafamilial child molesters

5

was collected in 1994 from RCMP records. Conviction for another sexual offence was used as the recidivism criteria in this sample.

Alberta Hospital Edmonton - Phoenix Program. (Reddon, 1996; see also Studer, Reddon, Roper & Estrada, 1996). The sexual offenders in this study were drawn from those treated at the Phoenix (Alberta Hospital Edmonton) program between 1987 and 1994. The Phoenix program is an eclectic inpatient treatment program that receives many of its referrals from federal correctional facilities. Recidivism information was collected in 1995 using RCMP records. Conviction for another sexual offence was used as the recidivism criteria in this sample.

California's Sex Offender Treatment and Evaluation Project (SOTEP). (Marques & Day, 1996; see also Marques, Day, Nelson & West, 1993; Marques, Nelson, West & Day, 1994). The primary aim of this ongoing study is to examine the efficacy of treatment. The sample used in the current study included sexual offenders randomly assigned to treatment (n = 172), matched volunteer controls, treatment refusers, as well as a general sample of sexual offenders from the California correctional system (total sample of 1,137). Men who had offended only against their biological children were not included. Subjects were admitted to this study between 1985 and 1995; follow-up information was collected in 1995 based on local and national criminal records, as well as local police and probation reports. Charges and convictions for another sexual offence were used as the recidivism criteria in this sample.

Her Majesty's Prison Service (UK). (Thornton, 1997). This study provided a 16 year follow-up of all sexual offenders released from Her Majesty's Prison Service (England and Wales) in 1979 (n = 573). Recidivism information was based on Home Office records collected in 1995. Very few of the offenders in this sample would have received specialised sexual offender treatment. Conviction for another sexual offence was used as the recidivism criteria in this sample.

Washington SSOSA. (Berliner, Schram, Miller & Milloy, 1995; Song & Lieb, 1995). This data set was created to evaluate Washington State's Special Sex Offender Sentencing Alternative (SSOSA), which allows judges to sentence sex offenders to community treatment. To be eligible for SSOSA, offenders must be facing their first felony conviction for sexual crimes other than first or second degree rape. The sample consisted of 287 offenders who received SSOSA and 300 who were statutorily eligible for SSOSA but did not receive it. The majority of the sample was White (85%). Offenders were convicted between January 1985 and June 1986, with follow-up data collected in December, 1990. Charges and convictions for another sexual offence were used as the recidivism criteria in this sample.

Manitoba Probation. (Hanson, 2002). This follow-up study was conducted as an evaluation of a risk scale used by probation officers in Manitoba, Canada. The 202 offenders were consecutive admissions to probation between May, 1997 and February, 1999. Recidivism information was collected in November, 2000, based on RCMP records. Unlike the RCMP records used in the other studies (which included only charges and convictions that went to court), the RCMP records for the Manitoba sample included unresolved charges and cases currently under police investigation.

Analysis

Case specific information (without individual identifiers) from the original 10 data sets were merged for the analysis. Recidivism estimates were computed using survival analysis (e.g., Allison, 1984). This analysis produces the cumulative proportion surviving at the end of a specific time period. These survival percentages were then subtracted from 100 to produce estimates of the recidivism potential at five, ten, and fifteen year intervals. In addition, the standard error of measurement was calculated for these estimates allowing for the calculation of 95% confidence intervals. Confidence intervals of 95% indicate the range within which the observed recidivism percentage should be found "19 times out of 20" or 95% of the time.

7

## Results

Sexual recidivism was measured using the original definitions from the original research reports: 5 data sets used convictions, 4 data sets used new charges (or a new conviction), and one sample used convictions, charges, and additional police information (Manitoba). The five and 10 year recidivism estimates were 17% and 21% for the studies that used only convictions as their recidivism criteria, and 12% and 19% for the studies that used charges and convictions as their recidivism criteria. Given the similarity in the recidivism rates based on convictions alone and charges and convictions, the data was combined to provide overall estimates of sexual recidivism rates. The rates estimated using the combined sample would be closer to the reconviction rate than the re-arrest rate because it appeared that the sources used for the recidivism data contained relatively few charges that did not ultimately result in conviction.

Sexual recidivism rates

Table 2 summarises the recidivism estimates for three distinct time periods, five years, ten years, and fifteen years, for each of the subgroups examined. The overall recidivism rates (14% after 5 years, 20% after 10 years and 24% after 15 years) were similar for rapists (14%, 21% and 24%) and the combined group of child molesters (13%, 18%, and 23%). There were, however, significant differences between the child molesters, with the highest rates observed among the extrafamilial boy-victim child molesters (35% after 15 years) and the lowest observed rates for the incest offenders (13% after 15 years).

Offenders with a prior sexual offence conviction had recidivism rates about double the rate observed for first-time sexual offenders (19% versus 37% after 15 years). Age also had a substantial association with recidivism, with offenders older than age 50 at release reoffending at half the rate of the younger (less than 50) offenders (12% versus 26%, respectively, after 15 years). As expected, those who have remained offence free in the community were at reduced risk for subsequent sexual recidivism. Whereas the average 10 year recidivism rate from time of release was 20%, the 10 year recidivism declined to 12% after five years offence-free and to 9% after 10 years offence-free. The five year recidivism rate for those who had been offence-free for 15 years was 4%. Offence-free was defined as no new sexual or violent non-sexual offence, and no non-violent offences serious enough that they are incarcerated at the end of the follow-up period.

Survival curves

The numbers in Table 2 were drawn from the survival analyses presented in Figures 1 through 6 (see Appendix I). Readers interested in further details of the recidivism rates can use these figures to estimate recidivism rates for different time periods (e.g., 3 years). Each offender is represented on the graph in the top left-hand corner at the time of release (time of sentencing for the community samples). Upon release, none have yet recidivated in the community – hence, 100% have not recidivated at time "0". As time passes (shown on the horizontal axis of the graph) some offenders recidivate and the survival curve descends. In order to know the percentage of offenders who have remained offence-free in the community for 10 years, follow a vertical line from the 10 year mark (on the axis labelled "Time in years") up to the survival curve. Next, go perpendicular from that point on the survival curve to the vertical axis (labelled "percentage of offenders that have not sexually recidivated"). To determine the percentage of offenders that have recidivated, simply subtract the percentage of offenders still in the community from 100.

One factor that should be noted from the graphs is that without exception, the longer offenders remain offence-free in the community the less likely they are to sexually recidivate. The flattening, or plateauing, of the curves over time shows this fact. The steepest part of the curve (the highest risk period) is in the first few years after release.

8

Table 2

Sexual Recidivism (%) across Time and Samples.

| Sub-Group | | 5 Years | 10 Years | 15 Years | Shown in Figure # |
|---|---|---|---|---|---|
| All sexual offenders | | 14 | 20 | 24 | 1 |
| Rapists | | 14 | 21 | 24 | 2 |
| Extended Incest Child Molesters | | 6 | 9 | 13 | 3 |
| "Girl Victim" Child Molesters | | 9 | 13 | 16 | 3 |
| "Boy Victim" Child Molesters | | 23 | 28 | 35 | 3 |
| Offenders without a previous sexual conviction versus those with a previous sexual conviction | Without | 10 | 15 | 19 | 4 |
| | With | 25 | 32 | 37 | 4 |
| Offenders over age 50 at release versus offenders less than age 50 at release | Over 50 | 7 | 11 | 12 | 5 |
| | Less than 50 | 15 | 21 | 26 | 5 |
| Sex Offenders - offence free in the community for Five, Ten, and Fifteen years | 5 years | 7 | 12 | 15 | 6 |
| | 10 years | 5 | 9 | ‡ | 6 |
| | 15 years | 4 | ‡ | ‡ | 6 |

‡ = Insufficient data to compute reliable estimates

9

Error of estimation

The data presented in all the graphs and in Table 2 are estimates, and some error is inherent in the estimation process. If the study was repeated with different samples, the numbers would not be exactly the same. One way to appreciate the stability of estimates is to calculate 95% confidence intervals based on the standard error of estimate from survival analysis (see Appendix II). Survival analysis computes standard error of estimate based on the number of recidivists and non-recidivists available at each previous time interval. The 95% confidence intervals indicate the range in which the results are likely to be found, 19 times out of 20, if the study were repeated 20 times.

For example, looking at Appendix II, the five year estimate for the overall sample (14.0%) was based on an initial sample of 4,724 of which 2,492 were followed for at least 5 years. The 95% confidence interval was 12.88% to 15.12%, plus or minus 1.12% from the estimate of 14.0%. With large sample sizes, the confidence intervals are narrow, indicating that subsequent research is likely to find very similar results. Readers should note, however, that confidence intervals expanded with extended follow-up times and when subgroups of offenders were examined. For example, the 15 year estimate for boy-victim child molesters (35.4%), was based upon only 95 observations and had a confidence interval from 29.3% to 40.7% (± 5.7%). Most of the confidence intervals were less than 5%.

Interpretation of recidivism estimates

The recidivism estimates may be applied to the general case or to the individual offender. For example, if you were faced with a group of 100 newly released rapists and you wanted to follow these offenders in the community over time (Looking at Table 2 – Second sub-group – "Rapists") you would expect fourteen (14) of these 100 rapists to reoffend within the first 5 years. In the following 5 years, follow-up years 6 through 10, you would expect a further 7 rapists to reoffend for a total of 21 offenders failing after 10 years. In the following 5 years, follow-up years 10 through 15, you would expect a further 3 rapists to recidivate for a 15-year estimated total of 24 out of 100, or 24% of the sample. It is interesting to note that in each successive 5-year period that the recidivism rate basically halves, from 14% in the first 5 years post-release, to 7% in the second 5-year period, to 3% in the third 5-year period.

You may also estimate the recidivism probabilities of one offender over time. If you have one "typical" rapist, the chance that he will recidivate by the end of the first 5 years would be estimated at 14%, by the end of 10 years at 21%, and by the end of 15 years at 24%. The probability of recidivism for an individual offender will be the same as the observed recidivism rate for the group to which he most closely belongs. The individual's recidivism risk will differ from his group's recidivism rate to the extent that the offender differs from "typical" members of the group (e.g., has committed more or fewer offences than average for that group). It is important to remember that the confidence intervals for the recidivism estimates only apply to the group estimates and not to the individual estimates. In statistical language, the expected mean value for the individual is the same as the group mean, but the variance of the mean is much greater for the individual estimate than for the group estimate.

11

# Discussion

Most sexual offenders do not re-offend sexually over time. This may be the most important finding of this study as this finding is contrary to some strongly held beliefs. After 15 years, 73% of sexual offenders had not been charged with, or convicted of, another sexual offence. The sample was sufficiently large that very strong contradictory evidence is necessary to substantially change these recidivism estimates. Other studies have found similar results. Hanson and Bussière's (1998) quantitative review of recidivism studies found an average recidivism rate of 13.4% after a follow-up period of 4-5 years (n = 23,393). In a recent U.S. study of 9,691 sex offenders, the sexual recidivism rate was only 5.3% after three years (Langan, Schmitt, & Durose, 2003).

Not all sexual offenders, however, were equally likely to reoffend. By using simple, easily observed characteristics, it was possible to differentiate between offenders whose five year recidivism rate was 5%, from those whose recidivism rate was 25%. The factors associated with increased risk were the following: a) male victims, b) prior sexual offences, and c) young age.

Although the number of recidivists increases with extended follow-up, the rate of offending decreases the longer offenders have been offence-free. The five year recidivism rate for new releases of 14% decreased to 4% for individuals who have been offence-free for 15 years. The observed rates underestimate the actual rates because not all sexual offences are detected; nevertheless, the current findings contrast with the popular notion that all sexual offender remain at risk throughout their lifespan.

The observed recidivism rates in the current study are slightly lower than the lifetime sexual recidivism rates estimated by Doren (1998) - 52% for child molesters and 39% for rapists. Doren's estimates were largely based on long-term follow-up of highly selected samples (Hanson et al., 1995; Prentky, et al., 1997); in contrast, the current study used larger and more diverse samples, including many low risk offenders serving community sentences. Doren's (1998) estimates were also based on charges, whereas most of the recidivism data in the current study was based on convictions.

Another difference is that Doren (1998) attempted to generate life-time estimates whereas our estimates extend only to 15 years. We were unable to locate any study that followed a large sample of sexual offenders until they were dead. Very long-term studies are difficult because records go missing, particularly for individuals who have had no recent involvement with the law (Hanson & Nicholaichuk, 2000). Nevertheless, the decreasing rate of offending with age suggests that the rates observed after 15 to 20 years are likely to approximate the rates that would be observed if offenders were followed for the rest of their lives.

When people ask questions about sexual offender recidivism rates, there often is an inherent assumption that the answer is a fixed, knowable rate that will not change. This supposition is unlikely to be true. The rate of sexual re-offence is quite likely to change over time due to social factors and the effectiveness of strategies for managing this population. Most of the offenders in the current study did not receive effective treatment, whereas treatment is currently provided to almost all of the high risk sexual offenders in Canada. Research has found that contemporary cognitive-behavioural treatment is associated with reductions in sexual recidivism rates from 17% to 10% after approximately 5 years of follow-up (Hanson et al., 2002). Furthermore, increased public awareness and concern should reduce the opportunities for sexual offenders to locate potential victims.

Policy implications

Although no finding is ever definitive, the basic findings of the current study are sufficiently reliable to have implications for criminal justice policy. Given that the level of sexual recidivism is lower than commonly believed, discussions of the risk posed by sexual offenders should clearly differentiate between the high public concern about these offences and the relatively low probability of sexual re-offence.

12

The variation in recidivism rates suggests that not all sex offenders should be treated the same. Within the correctional literature it is well known that the most effective use of correctional resources targets truly high-risk offenders and applies lower levels of resources to lower risk offenders (Andrews & Bonta, 2003). The greater the assessed risk, the higher the levels of intervention and supervision; the lower the assessed risk, the lower the levels of intervention and supervision. Research has even suggested that offenders may actually be made worse by the imposition of higher levels of treatment and supervision than is warranted given their risk level (Andrews & Bonta, 2003). Consequently, blanket policies that treat all sexual offenders as "high risk" waste resources by over-supervising lower risk offenders and risk diverting resources from the truly high-risk offenders who could benefit from increased supervision and human service.

Although the broad risk markers in the current study are useful for estimating recidivism risk, it is possible to improve predictive accuracy by combining such factors into structured risk scales (e.g., Hanson, 1997). The evidence supporting the validity of these risk scales is now sufficient that they should be routinely included in applied risk assessments with sexual offenders (Barbaree, Seto, Langton, Peacock, 2001; Sjöstedt, & Långström, 2001; and reviews by Doren, 2002; Hanson, Morton & Harris, 2003).

Rather than considering all sexual offenders as continuous, lifelong threats, society will be better served when legislation and policies consider the cost/benefit break point after which resources spent tracking and supervising low-risk sexual offenders are better re-directed toward the management of high-risk sexual offenders, crime prevention, and victim services.

13

## Author Note

The views expressed are those of the authors and do not necessarily reflect those of Public Safety and Emergency Preparedness Canada.  We would like to thank Jean Proulx, Larry Motiuk, Marylee Stephenson, John Reddon, Lea Studer, Janice Marques, Roxanne Lieb, and Lin Song for access to their original data sets.

Andrew Harris can be reached at Corrections Research, Public Safety and Emergency Preparedness Canada, 340 Laurier Ave., West, Ottawa, K1A 0P8.  Andrew.Harris@psepc-sppcc.gc.ca.

15

# References

Allison, P.D. (1984). *Event history analysis : Regression for longitudinal event data.* Beverly Hills, CA: Sage.

Andrews, D. A., & Bonta, J. L. (2003). *The psychology of criminal conduct, Third Edition.* Cincinnati, Ohio: Anderson Publishing.

Barbaree, H. E., Seto, M. C., Langton, C., & Peacock, E. (2001). Evaluating the predictive accuracy of six risk assessment instruments for adult sex offenders. *Criminal Justice and Behavior, 28,* 490-521.

Berliner, L., Schram, D., Miller, L. L., & Milloy, C. D. (1995). A sentencing alternative for sex offenders: A study of decision making and recidivism. *Journal of Interpersonal Violence, 10,* 487-502.

Besserer, S., & Trainor, C. (2000). Criminal victimization in Canada, 1999. *Juristat.* Catalogue no. 85-002-XIE Vol. 20 no. 10. Ottawa: Canadian Centre for Justice Statistics.

Bonta, J., & Hanson, R. K. (1995a). [10-year recidivism of Canadian federal offenders]. Unpublished raw data.

Bonta, J., & Hanson, R. K. (1995b, August). Violent recidivism of men released from prison. Paper presented at the 103rd annual convention of the American Psychological Association; New York.

CS/RESORS Consulting. (1991). *An evaluation of community sex offender programs in the Pacific Region.* Report presented to the Correctional Service of Canada Regional Headquarters (Contract no. 21803-0-A602/01-XSB). Vancouver, B.C.: Author.

Doren, D. M. (2002). *Evaluating Sex Offenders: A manual for civil commitments and beyond.* Sage: Thousand Oaks.

Doren, D. M. (1998). Recidivism base rates, predictions of sex offender recidivism, and the "sexual predator" commitment laws. *Behavioural Sciences and the Law, 16,* 97-114.

Hanson, R. K. (2002). *Evaluation of Manitoba's Secondary Risk Assessment.* Unpublished manuscript. Ottawa: Department of the Solicitor General of Canada.

Hanson, R. K. (1997). *The development of a brief actuarial risk scale for sexual offence recidivism.* (User Report 97-04. Ottawa: Department of the Solicitor General of Canada.

Hanson, R. K., Broom, I., & Stephenson, M. (2004). Evaluating community sex offender treatment programs: A 12-year follow-up of 724 offenders. *Canadian Journal of Behavioural Science, 36,* 87-96.

Hanson, R. K., & Bussière, M. T. (1998). Predicting relapse: A meta-analysis of sexual offender recidivism studies. *Journal of Consulting and Clinical Psychology, 66 (2),* 348-362.

Hanson, R. K., Gordon, A., Harris, A. J. R., Marques, J. K., Murphy, W., Quinsey, V., & Seto, M. (2002). The 2001 ATSA report on the effectiveness of treatment for sexual offenders. *Sexual Abuse: A Journal of Research and Treatment, 14 (2),* 169-194.

Hanson, R. K., Morton, K. E., & Harris, A. J. R. (2003). Sexual Offender Recidivism Risk: What We Know and What We Need to Know. In R. Prentky, E. Janus, & M. Seto (Eds.), *Understanding and managing sexually coercive behavior* (pp. 154-166). Annals of the New York Academy of Sciences, Vol 989. New York: New York Academy of Sciences.

Hanson, R. K., & Nicholaichuk, T. (2000). A cautionary note regarding Nicholaichuk et al. (2000). *Sexual Abuse: A Journal of Research and Treatment, 12(4),* 289-293.

Hanson, R. K., Scott, H., & Steffy, R. A. (1995). A comparison of child molesters and non-sexual criminals: Risk predictors and long-term recidivism. *Journal of Research in Crime and Delinquency, 32(3),* 325-337.

Hanson, R. K., Steffy, R. A., & Gauthier, R. (1992). *Long-term follow-up of child molesters: Risk prediction and treatment outcome.* (User Report No. 1992-02.) Ottawa: Corrections Branch, Ministry of the Solicitor General of Canada.

16

Hanson, R. K., Steffy, R. A., & Gauthier, R. (1993). Long-term recidivism of child molesters. *Journal of Consulting and Clinical Psychology, 61,* 646-652.

Langan, P. A., Schmitt, E. L., & Durose, M. R. (2003). Recidivism of sex offenders released from prison in 1984. Bureau of Justice Statistics NCJ 198281. Washington, DC: U.S. Department of Justice.

Marques, J. K., & Day, D. M. (1996). [SOTEP follow-up data for 1995]. Unpublished raw data.

Marques, J. K., Day, D. M., Nelson, C., & West, M. A. (1993). Effects of cognitive-behavioral treatment on sex offenders' recidivism: Preliminary results of a longitudinal study. *Criminal Justice and Behavior, 21,* 28-54.

Marques, J. K., Nelson, C., West, M. A., & Day, D. M. (1994). The relationship between treatment goals and recidivism among child molesters. *Behaviour Research and Therapy, 32,* 577-588.

Marshall, W. L., & Barbaree, H.E. (1988). The long-term evaluation of a behavioural treatment program for child molesters. *Behaviour Research and Therapy, 26(6),* 499-511.

Motiuk, L. L., & Brown, S. L. (1993). *Survival time until suspension for sex offenders on conditional release.* (Research Report No. R-31). Ottawa, Canada: Correctional Service of Canada.

Motiuk, L. L., & Brown, S. L. (1996). *Factors related to recidivism among released federal sex offenders.* (Research Report No. R-49). Ottawa, Canada: Correctional Service of Canada.

Motiuk, L. L., & Porporino, F. J. (1993). *An examination of sex offender case histories in federal corrections.* (Research Report No. R-30). Ottawa, Canada: Correctional Service of Canada.

Pellerin, B., Proulx, J., Ouimet, M., Paradis, Y., McKibben, A., & Aubut, J. (1996). Étude de la récidive post-traitement chez des agresseurs sexuels judiciarisés. *Criminologie, 29,* 85-108.

Prentky, R. A., Lee, A. F. S., Knight, R. A., & Cerce, D. (1997). Recidivism rates among child molesters and rapists: A methodological analysis. *Law and Human Behavior, 21,* 635-659.

Proulx, J., Pellerin, B., McKibben, A., Aubut, J., & Ouimet, M. (1997). Static and dynamic predictors of recidivism in sexual offenders. *Sexual Abuse, 9,* 7-28.

Reddon, J. R. (1996). [Phoenix Program for Sex Offender Treatment: An evaluation update with recidivism data obtained in September, 1995]. Unpublished raw data.

Savoir, J. (2002). Crime statistics in Canada, 2001. *Juristat.* Catalogue no. 85-002-XPE Vol. 22 no. 6. Ottawa: Canadian Centre for Justice Statistics.

Sjöstedt, G., & Långström, N. (2001). Actuarial assessment of sex offender recidivism risk: A cross validation of the RRASOR and the Static-99 in Sweden. *Law and Human Behaviour, 25,* 629-645.

Song, L., & Lieb, R. (1995). *Washington State sex offenders: Overview of recidivism studies.* Olympia, WA: Washington State Institute for Public Policy.

Studer, L. H., Reddon, J. R., Roper, V., & Estrada, L. (1996). Phoenix: An inpatient treatment program for sex offenders. *Journal of Offender Rehabilitation, 23,* 91-97.

Thornton, D. (1997). [A 16-year follow-up of 563 sexual offenders released from HM Prison Service in 1979.] Unpublished raw data.

17

Appendix I : Figure 1

## Sexual Recidivism in a Sample of Mixed Sexual Offenders (N = 4,724) Over a Twenty Year Period



18

Appendix I : Figure 2



Sexual Recidivism in a Sample of Rapists (N = 1,038)
Over a Fifteen Year Period

Percentage of
Offenders that
have not Sexually
Recidivated over
Time

Time in Years

19

Appendix I : Figure 3

## Sexual Recidivism in a Sample of Sexual Offenders

A     Recidivism in "Extended Incest" Offenders (N = 1, 099)     {Seventeen Year Follow-up}

B     Recidivism in "Girl Victim" Offenders (N = 1, 572)     {Seventeen Year Follow-up}

C     Recidivism in "Boy Victim" Offenders (N = 706)     {Fifteen Year Follow-up}



20

Appendix I : Figure 4



## Sexual Recidivism in a Sample of Sexual Offenders

Those without a previous sexual conviction (N = 2, 973)
Versus
Those with a previous sexual conviction (N = 965)
Over a Seventeen Year Period

21

Appendix I : Figure 5



## Sexual Recidivism in a Sample of Sexual Offenders

Those over the age of 50 at release (N = 488) {Thirteen Year Follow-up}
Versus
Those under the age of 50 at release (N = 3, 782) {Nineteen Year Follow-up}

22

Appendix I : Figure 6

## Sexual Recidivism in a Sample of Sexual Offenders

A    Recidivism in men who have been offence-free for at least 15 years (N = 610)

B    Recidivism in men who have been offence-free for at least 10 years (N = 1, 270)

C    Recidivism in men who have been offence-free for at least 5 years (N = 2, 110)



Percentage of Offenders that have not Sexually Recidivated over Time

Time in Years

23

## Appendix II

### Stability of Sexual Recidivism Estimates in Selected Samples of Sexual Offenders

| Sub-Group | | 5 Years<br>% (C.I.) | 10 Years<br>% (C.I.) | 15 Years<br>% (C.I.) |
|---|---|---|---|---|
| All sexual offenders<br>(N = 4,724) | | 14.0 (12.9-15.1)<br>n = 2,492 | 19.8 (18.5-21.5)<br>n = 1,348 | 24.2 (22.2-25.8)<br>n = 631 |
| Rapists<br>(N = 1,038) | | 14.1 (11.6-16.4)<br>n = 514 | 20.6 (17.8-24.2)<br>n = 261 | 24.1 (20.1-27.9)<br>n = 157 |
| Extended Incest Child Molesters<br>(N = 1,099) | | 6.4 (4.1-7.9)<br>n = 416 | 9.4 (5.6 –12.4)<br>n = 73 | 13.2 (7.7-18.3)<br>n = 69 |
| "Girl Victim" Child Molesters<br>(N = 1,572) | | 9.2 (7.3-10.7)<br>n = 766 | 13.1 (10.4-15:6)<br>n = 218 | 16.3 (12.7-19.3)<br>n = 208 |
| "Boy Victim" Child Molesters<br>(N = 706) | | 23.0 (19.4-26.6)<br>n = 315 | 27.8 (23.8-32.2)<br>n = 105 | 35.4 (29.3-40.7)<br>n = 95 |
| Offenders without a<br>previous sexual conviction<br>versus those with a<br>previous sexual conviction<br>Total N = 3,938  ? | Without<br><br>( n = 2,973)<br>With<br><br>(n = 965) | 9.8 (8.8-11.2)<br>n = 1,798<br><br>25.2 (22.0-28.0)<br>n = 528 | 15.3 (13.4-16.6)<br>n = 995<br><br>32.4 (28.6-35.4)<br>n = 340 | 19.4 (16.9-21.1)<br>n = 454<br><br>37.2 (33.2-40.8)<br>n = 178 |
| Offenders over age  50 at<br>release versus offenders<br>less than age  50 at release<br>Total N = 4,237 | Over 50<br><br>(n = 484)<br>Less than 50<br><br>(n = 3,753) | 7.1 (4.4-9.6)<br>n = 260<br><br>14.9 (13.8-16.2)<br>n = 2,208 | 10.7 (7.4-14.6)<br>n = 135<br><br>21.1 (19.4-22.6)<br>n = 1,204 | 12.5 (7.7-16.3)<br>n = 72<br><br>25.7 (24.0-28.0)<br>n = 558 |
| Sex Offenders - offence<br>free in the community for<br>Five, Ten, and Fifteen<br>years<br>Total N = 3,970 | 5 years<br>(n = 2,103) | 7.0 (5.8-8.2)<br>n = 1,336 | 12.0 (10.2-13.8)<br>n = 631 | 15.3 (11.8-18.2)<br>n = 87 |
| | 10 years<br>(n = 1,263) | 5.4 (3.5-6.5)<br>n = 631 | 9.0 (5.8-12.2)<br>n = 87 | ‡ |
| | 15 years<br>(n = 604) | 3.7 (0.9-7.1)<br>n = 87 | ‡ | ‡ |

Note: 95% confidence interval in parentheses

‡ = Insufficient data to compute reliable estimate

? = Pinel sample not included: (minus 382 offenders)

*Recidivism and Age:*

*Follow Up Data from 4673 Sexual Offenders*

(*Journal of Interpersonal Violence*, October 2002) ,

R. Karl Hanson

*This study examined the relationship of age to sexual recidivism using data from 10 follow-up studies of adult male sexual offenders (combined sample of 4,673). Rapists were younger than child molesters, and the recidivism risk of rapists steadily decreased with age. In contrast, extrafamilial child molesters showed relatively little reduction in recidivism risk until after the age of 50. The recidivism rate of intrafamilial child molesters was generally low (less than 10%), except for the intrafamilial offenders in the 18- to 24-year-old age group, whose recidivism risk was comparable to that of rapists and extrafamilial child molesters. The results are discussed in terms of developmental changes in sexual drive, self-control, and opportunities to offend.*

# Recidivism and Age

## Follow-Up Data From 4,673 Sexual Offenders

### R. KARL HANSON
*Department of the Solicitor General of Canada*

*The public is justifiably concerned* about the risk posed by sexual offenders. Although the observed sexual recidivism rates are only 10% to 15% after 5 years (Hanson & Bussière, 1998), the rates continue to increase gradually with extended follow-up periods (Hanson, Steffy, & Gauthier, 1993a). Do sexual offenders remain at risk throughout their lives, or is there some age limit after which their risks for recidivism is substantially reduced? How much of a threat is a 60-year-old child molester or a 60-year-old rapist?

The association between age and general criminal behavior is well established: Most crimes are committed by young people. For crimes reported to the police, the most common age is late adolescence (16 to 18 years), with the age of violent offenders being somewhat older than that of nonviolent offenders (Gottfredson & Hirschi, 1990). Longitudinal studies, however, indicate that the rate of aggressive behavior actually peaks in the preschool years (ages 3-4) and declines steadily thereafter (Tremblay, 2000). The apparent rise in violent crime during adolescence signals a change in community response to persistent aggressive behavior. Nagin and Tremblay (1999) did

Author's Note: The views expressed are those of the author and do not necessarily reflect those of the Portfolio of the Solicitor General of Canada. I would like to thank Marnie Rice, Grant Harris, Jean Proulx, Larry Motiuk, Marylee Stephenson, John Reddon, Lea Studer, Janice Marques, Roxanne Lieb, and Lin Song for access to their original data sets.

JOURNAL OF INTERPERSONAL VIOLENCE, Vol. 17 No. 10, October 2002 1046-1062
DOI: 10.1177/088626002236659
© 2002 Sage Publications

not find any persistently violent boys for whom the onset of aggression was later than age 6.

Less is known about the relationship between age and sexual crime. Based on data from 179 Canadian police departments, 81% of accused sexual offenders were 18 years of age or older (Canadian Centre for Justice Statistics, 1999). On average, accused sexual offenders are substantially older than other offenders and are slightly older than the general population. The age distribution for sexual offenders is markedly bimodal, however, with the largest peak at age 13, a dip in the early 20s, and a second peak in the mid- to late 30s (Canadian Centre for Justice Statistics, 1999). The reason for the bimodal distribution is unknown, but it does suggest that there may be a qualitative difference between adolescent and adult sexual offenders. The peak at age 13 may be attributed to generally antisocial, aggressive youth becoming sexually active. The peak in the late 30s may be related to increased opportunities for certain types of sexual offences during these years (e.g., father-daughter incest, child molestation).

Age differences are also noted among adult sexual offenders. It has long been observed that those who victimize adult women (rapists) tend to be younger than are those who target children (child molesters) (Apfelberg, Sugar, & Pfeffer, 1944; West, 1983).

The distribution of the age of accused sexual offenders does not necessarily indicate their relative recidivism risk. Although few sexual offenders are older than the age of 50, the older offenders may be more (or less) persistent than are younger sexual offenders. Hanson and Bussière's (1998) review of 21 follow-up studies ($N = 6,969$) found an overall negative relationship between age and risk for sexual recidivism (average $r = -.13$). The relationship, however, was not large, and there was considerable variability across studies.

It is possible that the relationship between age and sexual recidivism is different for different types of sexual offenders. Of all the sexual offenders, rapists show the greatest similarity to nonsexual criminals (West, 1983). Rapists are likely to have nonsexual criminal histories and are more likely than child molesters to recidivate with nonsexual crime (Hanson & Bussière, 1998). Consequently, it is likely that the recidivism rate of rapists steadily decreases with age.

The extent to which the recidivism rates of child molesters decreases with age is unknown. Given that most antisocial behavior declines with age, it is likely that the sexual recidivism rates of child molesters would similarly decline. It is possible, however, that the decline could be minimal. A strong or exclusive sexual interest in children could contribute to a sustained level of risk until late adulthood.

Child molesters who only target intrafamilial victims (incest offenders) have consistently lower recidivism risk than do other sexual offenders (Hanson & Bussière, 1998). Although incest offenders would be expected to be older than would extrafamilial child molesters (it takes time for one's own children to mature), it is unclear whether recidivism rates of incest offenders should substantially decrease with age. The disclosure process for the index offense may block access to the children in their current family, but the subsequent arrival of grandchildren may provide new opportunities.

To examine the relationship between age and sexual recidivism, secondary analyses were conducted on 10 samples of sexual offenders (total sample of 4,673). These samples were drawn from diverse settings in Canada ($k = 7$), the United States ($k = 2$), and the United Kingdom (one sample).

## METHOD

### Samples

All the offenders were adult males (18 years old or older). All were released from institutions, with the exception of about half of the offenders from the Washington Special Sex Offender Sentencing Alternative (SSOSA) sample, who received community sentences. Racial ethnicity was not recorded for most samples, but given the demographics of the jurisdictions from which they were selected, the offenders can be expected to be predominantly White. The sample sizes are slightly smaller than the numbers reported in the original studies due to missing age or recidivism data.

*Canadian federal recidivism study—1983 to 1984 releases* (Bonta & Hanson, 1995a; Bonta & Hanson. 1995b). This study examined all offenders with an index sex offense ($n = 316$) included in the complete sample of 3,180 offenders released by the Correctional Service of Canada in the fiscal year 1983-1984. Recidivism information was collected in 1994 using national criminal history records maintained by the Royal Canadian Mounted Police (RCMP).

*Canadian federal 1991 to 1994 releases* (Motiuk, 1995; Motiuk & Brown, 1993, 1996). This study followed a group of sexual offenders released by the Correctional Service of Canada between 1991 and 1994. The offenders in this group were those who were reviewed in 1991 (Motiuk & Porporino, 1993) while they were still incarcerated. Follow-up information was coded from 1994 RCMP records.

*Canadian federal—Pacific Region* (CS/RESORS Consulting, 1991; Hanson, Broom, & Stephenson, 2001). This study followed sexual offenders released in British Columbia between 1976 and 1992. The original study compared offenders who received mandatory community counseling ($n = 401$) with those released in earlier years without the benefit of this postrelease program ($n = 288$). Offenders released in the 1983-1984 fiscal year ($n = 38$) were removed from this sample to avoid overlap with the other Correctional Service of Canada cohort previously described. Recidivism information was coded in 2000 from RCMP records.

*Alberta Hospital Edmonton—Phoenix program* (Reddon, 1996; see also Studer, Reddon, Roper, & Estrada, 1996). These sexual offenders were treated at the Phoenix (Alberta Hospital Edmonton) program between 1987 and 1994. The Phoenix program is an eclectic inpatient treatment program that receives many of its referrals from federal correctional facilities. Recidivism information was collected in 1995 using RCMP records.

*California's Sex Offender Treatment and Evaluation Project* (Marques & Day, 1996; see also Marques, Day, Nelson, & West, 1993; Marques, Nelson, West, & Day, 1994). The primary aim of this ongoing study is to examine the efficacy of treatment. The sample included sexual offenders randomly assigned to treatment ($n = 172$), matched volunteer controls, treatment refusers, and a general sample of sexual offenders from the California correctional system (total sample of 1,137). Men who had offended only against their biological children were not included. Participants were admitted to this study between 1985 and 1995; follow-up information was collected in 1995 based on local and national criminal records as well as on local police and probation reports.

*Institut Philippe Pinel (Montreal)* (Proulx, Pellerin, McKibben, Aubut, & Ouimet, 1995; see also Pellerin et al., 1996; Proulx, Pellerin, McKibben, Aubut, & Ouimet, 1997). These sexual offenders were treated at a maximum-security psychiatric facility between 1978 and 1993. The Institut Philippe Pinel in Montreal provides long-term (1 to 3 years) treatment for sexual offenders referred from both the mental health and correctional systems. Recidivism information was collected in 1994 from RCMP records.

*Millbrook recidivism study* (Hanson, Steffy, & Gauthier, 1993b; see also Hanson, Scott, & Steffy, 1995; Hanson et al., 1993a). This study collected long-term recidivism information (15 to 30 years) for child molesters released between 1958 and 1974 from Millbrook Correctional Centre, a maximum-

security provincial correctional facility located in Ontario, Canada. About half of the sample went through a brief treatment program. Recidivism information was coded from RCMP records in 1989 and 1991.

*Oak Ridge Division of the Penetanguishene Mental Health Centre* (Rice & Harris, 1996; see also Quinsey, Rice, & Harris, 1995; Rice & Harris, 1997; Rice, Harris, & Quinsey, 1990; Rice, Quinsey, & Harris, 1991). The Oak Ridge study followed sexual offenders referred between 1972 and 1993 for treatment and/or assessment to a maximum-security mental health center located in Ontario, Canada. The majority of the referrals came from the mental health systems or the courts (e.g., pretrial fitness examinations), with a minority of cases coming from provincial or federal corrections. Follow-up information was based on RCMP records as well as mental health records (i.e., new admissions for sexual offenses, regardless of whether new charges were laid).

*Her Majesty's Prison Service (United Kingdom)* (Thornton, 1997). The study provided a 16-year follow-up of all sexual offenders released from Her Majesty's Prison Service (in England and Wales) in 1979 ($N = 573$). Recidivism information was based on home office records collected in 1995. Very few of the offenders in this sample would have received specialized sexual offender treatment.

*Washington SSOSA* (Berliner, Schram, Miller, & Milloy, 1995; Song & Lieb, 1995). This data set was created to evaluate Washington State's SSOSA, which allows judges to sentence sex offenders to community treatment. To be eligible for SSOSA, offenders must be facing their first felony conviction for sexual crimes other than first- or second-degree rape. The sample consisted of 287 offenders who received SSOSA and 300 who were statutorily eligible for SSOSA but did not receive it. The majority of the sample was White (85%). Offenders were convicted between January 1985 and June 1986, with follow-up data collected in December 1990.

### Analyses

The analyses were conducted on a data set that combined the previous samples. Age was measured at the time of release from institution, except for the Washington SSOSA sample, for which age was measured at time of sentencing. Sexual recidivism was measured using the definitions used in the original reports, which in most cases, was either charges ($k = 4$) or convic-

TABLE 1: Study Characteristics

| Sample | Total Sample Size | Age (SD) | | Offender Type (%) | | | Sample Size for Type | Years of Follow-Up | Average Recidivism Rate | Sexual Recidivism Criteria |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Rapist | EX | IN | | | | |
| Canadian federal 1983 to 1984 releases | 315 | 31 | (8.7) | — | — | — | 0 | 10 | 19.7 | Convictions |
| Canadian federal 1991 to 1994 releases | 241 | 37 | (11) | 53 | 19 | 28 | 208 | 2 | 7.1 | Charges |
| Canadian federal Pacific Region | 689 | 38 | (11) | 36 | 30 | 33 | 362 | 11 | 24.7 | Charges |
| Millbrook, Ontario | 186 | 33 | (10) | 00 | 82 | 18 | 186 | 23 | 35.5 | Convictions |
| Institut Philippe Pinel | 363 | 36 | (11) | 30 | 43 | 27 | 349 | 4 | 16.3 | Convictions |
| Alberta Hospital Edmonton | 363 | 36 | (10) | 27 | 27 | 46 | 363 | 5 | 5.5 | Convictions |
| Sex Offender Treatment and Evaluation Project (California) | 1137 | 38 | (8.9) | 29 | 40 | 31 | 1130 | 4 | 13.3 | Charges |
| Oak Ridge Penetanguishene, Ontario | 263 | 31 | (9.4) | 52 | 26 | 22 | 246 | 10 | 36.1 | Charges and/or readmissions |
| Her Majesty's Prison Service (United Kingdom) | 529 | 36 | (12) | 53 | 32 | 15 | 325 | 16 | 25.7 | Convictions |
| Washington State Special Sex Offender Sentencing Alternative | 587 | 36 | (13) | 10 | 41 | 49 | 587 | 5 | 7.5 | Charges |

NOTE: EX = Extrafamilial child molesters; IN = Intrafamilial child molesters.

tions ($k = 5$). The Oak Ridge sample also included readmissions to psychiatric facilities among their recidivism criteria.

Preliminary analyses were conducted that examined the association between age and recidivism in each sample. The meta-analysis of the individual samples found the same pattern of results as the analysis of the total sample. For simplicity, only the results from the total sample are presented.

The primary statistical procedure used to measure the association between age and sexual recidivism was logistic regression (Neter, Kutner, Nachtsheim, & Wasserman, 1996). Logistic regression is preferable to ordinary least square regression when the outcome variables are dichotomous. In comparison with correlation coefficients, the logistic regression coefficients are less influenced by recidivism base rates and variability in the predictor variables. One way to interpret a logistic regression coefficient is as the expected change in the recidivism rate associated with an increase in age of one year; more specifically, $e^B$ is an odds ratio. For example, if B was $-.04$, the odds ratio would be $(2.714)^{-.04} = .96$. This value of .96 can be interpreted to mean that if Jack is one year older than Frank, Jack's recidivism rate would be expected to be 96% of Frank's expected recidivism rate (a 4% reduction). For small values of B, the percentage change in recidivism rates is approximately equal to the absolute value of B (i.e., B = $-.04$ corresponds to a 4% reduction; B = .10 corresponds to a 10.5% increase).

Curvilinear effects can be tested by entering the square of the predictor variable ($Y^2$) after entering the predictor variable (Y). Readers should be cautioned, however, that when Y and $Y^2$ are considered simultaneously, the value of their respective regression coefficients (and their significant tests) can be influenced by arbitrary features of scaling. Consequently, the resulting regression coefficients do not provide a test of the relative magnitude of the linear and curvilinear effects. The regression coefficients for the curve components are presented, nonetheless, to indicate the direction of any potential curvilinear effects.

## RESULTS

The combined sample included 4,673 sexual offenders. Based on the offenders' predominant victim choice, the sample was divided into those who sexually victimized adult women (rapists; $n = 1,133$), child molesters who victimized any unrelated children (extrafamilial child molesters, $n = 1,411$), and child molesters who victimized only related children (incest offenders, $n = 1,207$). Excluded from the classification were 47 offenders who victimized both adult women and unrelated children and 875 offenders for whom victim



Figure 1:   Age Distribution of Sexual Offenders

information was not available. The classification, however, was based on limited information, and the cross-over between victim types would likely be greater than that implied by the current classification.

As can be seen in Figure 1, the rapists ($M = 32.1$, $SD = 8.9$) were younger than the extrafamilial child molesters ($M = 37.1$, $SD = 11.5$) and incest offenders ($M = 38.9$, $SD = 9.9$). Due to the large sample sizes, differences between all the groups were statistically significant at $p < .001$, although the average age difference between the two child molesters groups was only 1.8 years.

The sexual recidivism rate for the total sample was 17.5% (820 of 4,673). In the total sample, the recidivism rate declined steadily with age (logistic regression, $B = -.036$, $SD = 0.004$, $p < .001$). The association was linear; the addition of a curvilinear component did not significantly improve the fit of the regression line ($\chi^2$ change $= 0.18$, $df = 1$, $p > .50$). The correlation between age and sexual recidivism was $-.13$ ($p > .001$), and the receiver operating characteristic area was .60 (95% confidence interval of .58 to .62).

The groups recidivated at different rates (logistic $\chi^2$ change $= 57.91$, $df = 2$, $p > .001$), with incest offender recidivating less often (8.4%) than rapists (17.1%) and extrafamilial child molesters (19.5%). Without controlling for age, the difference in recidivism rates for the rapist and extrafamilial child molesters was not statistically significant (logistic $\chi^2 = 2.21$, $df = 1$, $p > .10$). Controlling for age, however, resulted in a significantly higher recidivism rate for extrafamilial child molesters than for rapists (logistic $\chi^2 = 7.71$, $df = 1$,

1054    JOURNAL OF INTERPERSONAL VIOLENCE / October 2002



Figure 2:   Recidivism Rates by Age Category

$p < .005$). The incest offenders had the lowest recidivism rates in all the comparisons ($p < .001$).

Although the effect of age was linear in the total sample, the relationship with age was different for the rapists, extrafamilial child molesters, and incest offenders (see Figure 2; interaction between groups and age[2]: logistic $\chi^2$ change = 6.81, $df = 2$, $p < .05$). The separate analyses for the three groups are displayed in Table 2. The recidivism rate for rapists steadily decreased with age (logistic B = −.040, $SD = .010$). In contrast, the highest risk age period for extrafamilial child molesters was between the ages of 25 and 35 (not 18 to 24). The recidivism rate of the extrafamilial child molesters showed relatively little decline until after age 50.

Incest offenders showed a different pattern. The recidivism rate for the incest offenders was generally low (less than 10%), except for incest offenders in the 18-to-24 age group who showed a relatively high recidivism rate (30.7%).

There were very few recidivists among the sexual offenders released after age 60 (5 of 131 or 3.8%). The older-than-60 recidivists included two extrafamilial child molesters (2 of 45 or 4.4%) and three unclassified offenders (3 of 37 or 8.1%). None of the incest offenders ($n = 39$) or rapists ($n = 10$) released after age 60 recidivated. The oldest recidivist in the sample was released at age 72 and was reconvicted for a sexual offense the following year.

TABLE 2:  The Relationship Between Age (years) and Sexual Recidivism (1 = yes, 0 = no)

| Sample | Sample Size | Step | Logistic Regression Coefficients | | | $\chi^2$ Change | $\chi^2$ Model |
|---|---|---|---|---|---|---|---|
| | | | Intercept | Linear | Curvilinear | | |
| Rapists | 1,133 | 1 | −0.334 (0.319) | −0.040 (0.010) | — — | 16.82*** | |
| | | 2 | −0.585 (0.995) | −0.024 (0.060) | 0.00023 (0.00088) | 0.073 | 17.37*** |
| Extrafamilial child molesters | 1,411 | 1 | −0.411 (0.232) | −0.078 (0.006) | — — | 20.65*** | |
| | | 2 | −2.344 (0.778) | 0.082 (0.043) | −0.00144 (0.00056) | 7.44** | 27.98*** |
| Incest offenders | 1,207 | 1 | −0.069 (0.448) | −0.064 (0.013) | — — | 28.88*** | |
| | | 2 | 1.359 (1.154) | −0.144 (0.061) | 0.00108 (0.00079) | 1.59 | 30.38*** |
| Total | 4,673 | 1 | −0.324 (0.140) | −0.035 (0.004) | — — | 84.68*** | |
| | | 2 | −0.489 (0.410) | −0.026 (0.023) | 0.00013 (0.00030) | 0.19 | 84.87*** |

NOTE: Standard deviations in parentheses.
*$p < .05$. **$p < .01$. ***$p < .001$.

## DISCUSSION

As with other criminal behavior, the rate of sexual offending decreased with age. The rate of decline was rather gradual, however, and there were significant differences between types of sexual offenders. Rapists were younger than other sexual offenders (45% were younger than 30), and their recidivism risk steadily decreased with age. Extrafamilial child molesters showed little decline in their recidivism risk until after the age of 50. The highest risk period for extrafamilial child molesters was between the ages of 25 and 35. In contrast, the young (18- to 24-year-old) incest offenders were at substantially higher risk than were incest offenders from other age groups.

The average recidivism rate for the incest offenders (8%) was lower than the average recidivism risk for extrafamilial child molesters (19%) and rapists (17%). Although the recidivism rates for extrafamilial child molesters and rapists were similar, extrafamilial child molesters were, on average, older than rapists. When age was controlled, the extrafamilial child molesters were at significantly higher risk for sexual recidivism than were the rapists.

Among the various factors linked to sexual offending, the three broad factors most relevant to this study are deviant sexual interests (motivation), opportunity, and low self-control. The distribution of these factors across offender types can help explain the age distribution of offenders and the variation in their recidivism rates.

### Sexual Drive and/or Deviant Sexual Interests

Although all sexual offenders engage in sexually deviant behavior, most do not have an enduring preference for illegal sexual activities. Offenders may act on these less-than-preferred sexual objects or activities for any number of reasons, including peer pressure (e.g., Kanin, 1967), impulsivity, and opportunity.

Previous research has suggested that deviant sexual interest is an important risk factor for sexual recidivism (Hanson & Bussière, 1998). To the extent that deviant sexual interests are an integral part of an offender's sexual life, then the persistence of sexual offending should mirror the persistence of the offender's sexual drive.

Research on normal populations has found that male sexual drive declines steadily with age, although the reduction is relatively limited until after age 50 (Kinsey, Pomeroy, & Martin, 1948; Panser et al., 1995; Trocki, 1992). Fewer than 1% of men aged 40 to 49 reported "no sex drive," compared with 26% of men older than the age of 70 (Panser et al., 1995). Among the factors

that can contribute to reduced sexual drive are disease and age-related decreases in testosterone (Gray, Feldman, McKinlay, & Longcope, 1991).

Deviant sexual interests are more common among extrafamilial child molesters than among incest offenders (Marshall, 1997). It is difficult to directly compare the rate of deviant sexual interest among rapists with the rate among child molesters. Sexual interests exist on a continuum, and it is not clear what level of sexual interest in violence corresponds to an equivalently deviant level of sexual interest in children. On average, however, rapists respond to violent erotic stimuli more than to depictions of consensual sexual activities (Lalumière & Quinsey, 1994), suggesting that at least some rapists have deviant sexual interests.

## Low Self-Control

The second major factor associated with sexual offending is low self-control or criminal lifestyle. The association between low self-control and criminal behavior is sufficiently strong that Gottfredson and Hirschi (1990) considered it to be the cause of crime. Self-control increases dramatically from childhood to adulthood, and the age-related decline in almost all impulsive, risky behavior (e.g., fast driving, substance abuse, theft, assault) suggests that self-control and constraint continue to develop well into the adult years.

Previous research has found that impulsivity and criminal lifestyle are related to the risk of sexual recidivism (Hanson & Bussière, 1998; Prentky, Knight, Lee, & Cerce, 1995). Low self-control is more common among rapists than among child molesters (West, 1983). The research has not found consistent difference between incest offenders and extrafamilial child molesters on indicators of low-self control such as low education, substance abuse, aggression, and psychopathy (Firestone et al., 1999, 2000; Miner & Dwyer, 1997; Symbaluk, 1998).

## Opportunity

Opportunities for child molesting should increase in middle adulthood. Most child molesters exploit a relationship of trust with a known or related victim. It is between their late 20s and early 40s that men are most likely to have their own children and to associate with friends and family who have children.

The opportunities for rape, in contrast, should gradually decrease with age. Most rape victims are young women known to offenders. People tend to associate with people their same age; consequently, as men age, they would

be expected to encounter fewer potential victims and fewer circumstances in which rape is an easily available option (e.g., bars, college parties).

## An Interpretation of the Age-Recidivism Findings

The three factors of sexual deviancy, self-control, and opportunity are consistent with the age-recidivism findings for rapists and extrafamilial child molesters. For rapists, all three factors should decline with age. Self-control should increase in young adulthood, deviant sexual drives should decrease in late adulthood, and opportunities should gradually decline throughout the life-span. Consequently, it is not surprising that most rapists are young and that their recidivism risk steadily declines with age.

For extrafamilial child molesters, competing factors may influence recidivism risk during early to middle adulthood. Self-control should improve in the transition from the 20s to the 30s, but the opportunities for child molesting should increase. It is not until late adulthood that opportunities for relationships with children decline along with declines in sexual drive. This theory is consistent with the findings that child molesters are older than rapists and that the recidivism rate of extrafamilial child molesters is relatively constant during the early and middle years of adulthood.

The theory outlined previously provides only a partial fit to the finding for incest offenders. The peak frequency of incest offenders in the late 30s is consistent with increased opportunity for incestuous abuse during middle adulthood. Also, the low recidivism rates of incest offenders is consistent with their relatively low levels of deviant sexual interests (compared with extrafamilial child molesters), moderately stable lifestyles (compared with rapists), and reduced opportunity compared with other sexual offenders (their available victim pool is restricted to family members).

The high recidivism rates of young incest offenders, however, were unexpected. There were relatively few incest offenders in the 18- to 24-year age group ($n = 75$), but their recidivism rate was among the highest for any offender type (31%). These findings suggest that young incest offenders may be a group distinct from typical father-daughter incest offenders. In this study, the victims of younger incest offenders were unknown but were unlikely to be their own children. Instead, they most likely victimized their siblings, step-siblings, or nieces or nephews. The extent to which these young incest offenders resemble other sexual offenders (e.g., rapists, extrafamilial child molesters) remains to be explored. All the offenders in the sample, however, would have been expected to have used overt force or selected victims

much younger than themselves. Relatively consensual sexual behavior among siblings rarely invokes the serious criminal justice sanctions imposed on most offenders in this study.

There were few sexual offenders of any type in the advanced age categories (11% of the total sample was older than 50), and their recidivism rates were generally low (less than 10%). This decline in late adulthood can be attributed to the confluence of decreasing sexual drive and decreasing opportunity. Perhaps the most salient factor for the oldest age groups, however, would be increasing ill health and eventual death. Medical records were not available for any of the samples analyzed in this study; consequently, research has yet to examine the extent to which reductions in sexual recidivism risk should be expected for older offenders who remain in good health. In the normal population, decreases in sexual interest and activities in later years are closely linked to concomitant illness (Panser et al., 1995).

In summary, this study found that the recidivism risk for sexual offenders decreased with age, but the overall effect was not large and the pattern of decline was different for rapists, extrafamilial child molesters, and incest offenders. Extrafamilial child molesters show relatively little decline in their recidivism risk until after the age of 50. Sexual offenders released after the age of 60 showed very low recidivism rates (3.8%).

Although the factors of deviant sexual drive, low self-control, and opportunity provide a plausible explanation for the findings, other explanations need to be considered. All of the data were cross-sectional rather than longitudinal; consequently, an apparent age-related decline in sexual offending could be explained by cohort effects. Given that there are strong cohort effects in sexual behavior (e.g., almost all, or 95%, of those born after 1964 had intercourse prior to age 18 compared to half, or 51%, of those born before 1949; Trocki, 1992), it is possible that there are also cohort effects in the rates of sexual offending.

Another consideration is that offenders' ages were measured at time of release and not at the onset of offending. Consequently, the finding that child molesters were older than rapists could be attributed to a greater delay in the detection and prosecution of offenses against children than for offenses against adults.

Much of the age decline in sexual offending could also be attributed to a simple learning effect. With experience, men can learn that sex offending is not an effective route to happiness, or, more disturbingly, they can learn new and better ways to avoid detection. Disentangling these various explanation requires, of course, further research.

1060   JOURNAL OF INTERPERSONAL VIOLENCE / October 2002

## REFERENCES

Apfelberg, B., Sugar, C., & Pfeffer, A. Z. (1944). A psychiatric study of 250 sex offenders. *American Journal of Psychiatry, 100*, 762-770.

Berliner, L., Schram, D., Miller, L. L., & Milloy, C. D. (1995). A sentencing alternative for sex offenders: A study of decision making and recidivism. *Journal of Interpersonal Violence, 10*, 487-502.

Bonta, J., & Hanson, R. K. (1995a). [10-year recidivism of Canadian federal offenders]. Unpublished raw data.

Bonta, J., & Hanson, R. K. (1995b, August). *Violent recidivism of men released from prison.* Paper presented at the 103rd annual convention of the American Psychological Association, New York.

Canadian Centre for Justice Statistics. (1999). *Sex offenders* (Juristat Catalogue No. 85-002-XIE, Vol. 19, No. 3). Ottawa: Statistics Canada.

CS/RESORS Consulting. (1991). *An evaluation of community sex offender programs in the Pacific Region.* Report presented to the Correctional Service of Canada Regional Headquarters (Contract No. 21803-0-A602/01-XSB). Vancouver, BC: Author.

Firestone, P., Bradford, J. M., McCoy, M., Greenberg, D. M., Curry, S., & Larose, M. R. (2000). Prediction of recidivism in extrafamilial child molesters based on court-related assessments. *Sexual Abuse: A Journal of Research and Treatment, 12*, 203-221.

Firestone, P., Bradford, J. M., McCoy, M., Greenberg, D. M., Larose, M. R., & Curry, S. (1999). Prediction of recidivism in incest offenders. *Journal of Interpersonal Violence, 14*, 511-531.

Gottfredson, M. R., & Hirschi, T. (1990). *A general theory of crime.* Stanford, CA: Stanford University Press.

Gray, A., Feldman, H. A., McKinlay, J. B., & Longcope, C. (1991). Age, disease, and changing sex hormone levels in middle-aged men: Results of the Massachusetts Male Aging Study. *Journal of Clinical Endocrinology and Metabolism, 73*, 1016-1025.

Hanson, R. K., Broom, L., & Stephenson, M. (2001). [Updated recidivism information on sexual offenders in the CSC Pacific Region]. Unpublished raw data.

Hanson, R. K., & Bussière, M. T. (1998). Predicting relapse: A meta-analysis of sexual offender recidivism studies. *Journal of Consulting and Clinical Psychology, 66*, 348-362.

Hanson, R. K., Scott, H., & Steffy, R. A. (1995). A comparison of child molesters and non-sexual criminals: Risk predictors and long-term recidivism. *Journal of Research in Crime and Delinquency, 32*, 325-337.

Hanson, R. K., Steffy, R. A., & Gauthier, R. (1993a). Long-term recidivism of child molesters. *Journal of Consulting and Clinical Psychology, 61*, 646-652.

Hanson, R. K., Steffy, R. A., & Gauthier, R. (1993b). [Long-term recidivism of child molesters]. Unpublished raw data.

Kamin, E. J. (1967). Reference groups and sex conduct norm violations. *The Sociological Quarterly, 8*, 495-504.

Kinsey, A. C., Pomeroy, W. B., & Martin, C. E. (1948). *Sexual behavior in the human male.* Philadelphia: W. B. Saunders.

Lalumière, M. L., & Quinsey, V. L. (1994). The discriminability of rapists from non-sex offenders using phallometric measures: A meta-analysis. *Criminal Justice and Behavior, 21*, 150-175.

Marques, J. K., & Day, D. M. (1996). [SOTEP follow-up data for 1995]. Unpublished raw data.

Marques, J. K., Day, D. M., Nelson, C., & West, M. A. (1993). Effects of cognitive-behavioral treatment on sex offenders' recidivism: Preliminary results of a longitudinal study. *Criminal Justice and Behavior, 21*, 28-54.

Marques, J. K., Nelson, C., West, M. A., & Day, D. M. (1994). The relationship between treatment goals and recidivism among child molesters. *Behaviour Research and Therapy, 32*, 577-588.

Marshall, W. L. (1997). Pedophilia: Psychopathology and theory. In D. R. Laws & W. O'Donohue (Eds.), *Sexual deviance: Theory, assessment and treatment* (pp. 152-174). New York: Guilford.

Miner, M. H., & Dwyer, S. M. (1997). The psychosocial development of sex offenders: Differences between exhibitionists, child molesters, and incest offenders. *International Journal of Offender Therapy and Comparative Criminology, 41*, 36-44.

Motiuk, L. L. (1995). [Sex offender recidivism information for case load and new releases: March 1991 to July 1994]. Unpublished raw data.

Motiuk, L. L., & Brown, S. L. (1993). *Survival time until suspension for sex offenders on conditional release* (Research Report No. R-31). Ottawa, Canada: Correctional Service of Canada.

Motiuk, L. L., & Brown, S. L. (1996). *Factors related to recidivism among released federal sex offenders* (Research Report No. R-49). Ottawa, Canada: Correctional Service of Canada.

Motiuk, L. L., & Porporino, F. J. (1993). *An examination of sex offender case histories in federal corrections* (Research Report No. R-30). Ottawa, Canada: Correctional Service of Canada.

Nagin, D., & Tremblay, R. E. (1999). Trajectories of boys' physical aggression, opposition, and hyperactivity on the path to physically violent and non violent juvenile delinquency. *Child Development, 70*, 1181-1196.

Neter, J., Kutner, M. H., Nachtsheim, C. J., & Wasserman, W. (1996). *Applied linear statistical models* (4th ed.). Burr Ridge, IL: Irwin.

Panser, L. A., Rhodes, T., Girman, C. J., Guess, H. A., Chute, C. G., Oesterling, J. E., et al. (1995). Sexual function of men ages 40 to 79 years: The Olmsted County study of urinary symptoms and health status among men. *Journal of the American Geriatrics Society, 43*, 1107-1111.

Pellerin, B., Proulx, J., Ouimet, M., Paradis, Y., McKibben, A., & Aubut, J. (1996). Étude de la récidive post-traitement chez des agresseurs sexuels judiciarisés [Study of posttreatment recidivism among sexual offenders subject to judicial control]. *Criminologie, 29*, 85-108.

Prentky, R. A., Knight, R. A., Lee, A. F., & Cerce, D. D. (1995). Predictive validity of lifestyle impulsivity for rapists. *Criminal Justice and Behavior, 22*, 106-128.

Proulx, J., Pellerin, B., McKibben, A., Aubut, J., & Ouimet, M. (1995). [Static and dynamic predictors of recidivism in sexual aggressors]. Unpublished raw data.

Proulx, J., Pellerin, B., McKibben, A., Aubut, J., & Ouimet, M. (1997). Static and dynamic predictors of recidivism in sexual offenders. *Sexual Abuse, 9*, 7-28.

Quinsey, V. L., Rice, M. E., & Harris, G. T. (1995). Actuarial prediction of sexual recidivism. *Journal of Interpersonal Violence, 10*, 85-105.

Reddon, J. R. (1996). [Phoenix Program for Sex Offender Treatment: An evaluation update with recidivism data obtained in September 1995]. Unpublished raw data.

Rice, M. E., & Harris, G. T. (1996). [Recidivism information on 288 sexual offenders released from the Oakridge Mental Health Centre, Penetanguishene, Ontario]. Unpublished raw data.

Rice, M. E., & Harris, G. T. (1997). Cross-validation and extension of the Violence Risk Appraisal Guide for child molesters and rapists. *Law and Human Behavior, 21*, 231-241.

Rice, M. E., Harris, G. T., & Quinsey, V. L. (1990). A follow-up of rapists assessed in a maximum-
    security psychiatric facility. *Journal of Interpersonal Violence, 5,* 435-448.
Rice, M. E., Quinsey, V. L., & Harris, G. T. (1991). Sexual recidivism among child molesters
    released from a maximum security institution. *Journal of Consulting and Clinical Psychol-
    ogy, 59,* 381-386.
Song, L., & Lieb, R. (1995). *Washington State sex offenders: Overview of recidivism studies.*
    Olympia: Washington State Institute for Public Policy.
Studer, L. H., Reddon, J. R., Roper, V., & Estrada, L. (1996). Phoenix: An inpatient treatment
    program for sex offenders. *Journal of Offender Rehabilitation, 23,* 91-97.
Symbaluk, D. G. (1998). *An application of the general theory of crime to sex offenders.* Unpub-
    lished doctoral dissertation, University of Alberta, Edmonton, Canada.
Thornton, D. (1997). [A 16-year follow-up of 563 sexual offenders released from HM Prison
    Service in 1979]. Unpublished raw data.
Tremblay, R. E. (2000). The origins of youth violence. *Isuma: Canadian Journal of Policy
    Research/Revue canadienne de recherche sur les politiques, 1*(2), 19-24.
Trocki, K. F. (1992). Patterns of sexuality and risky sexuality in the general population of a Cali-
    fornia county. *Journal of Sex Research, 29,* 85-94.
West, D. J. (1983). Sex offenses and offending. In M. Tonry & N. Morris (Eds.), *Crime and jus-
    tice: An annual review of research* (pp. 183-233). Chicago: University of Chicago Press.

*R. Karl Hanson received his Ph.D. in clinical psychology from the University of Waterloo
(Ontario) in 1986. Since 1991, he has been a senior research officer with the Department
of the Solicitor General Canada and an adjunct research professor in the psychology
department at Carleton University. His research has focused on the assessment and
treatment of sexual offenders and abusive men.*

*Certification of Service*

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court (CMECF) on this 1 st day of September 2023 by using the CMECF system which will send a notice of electronic filing to the following: Ranganath Manthripragada, Assistant United States Attorney.

Respectfully submitted.
Through counsel:

*/s/ Dale Marie Merrill*
Dale Marie Merrill, FL Bar #12604
Law Office of Dale Marie Merrill
P.O. Box 2139
Crystal River, FL 34423
Phone: 352-795-3327
Fax: 352-795-3324
Email: dalemariem@aol.com